Case 4:22-cv-04525   Document 37   Filed on 02/12/24 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
February 12, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GABRYELLE DANIELS, | § | |
|    Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-04525 |
| | § | |
| THE STATE OF TEXAS, | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant the State of Texas's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 22). Having carefully reviewed the motion, response, reply, sur-reply, and applicable law, the Court **GRANTS** the motion. Accordingly, Plaintiff Gabryelle Daniels's claims are **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(1) for lack of subject-matter jurisdiction and under 28 U.S.C. § 1367(c). All other pending motions are **DENIED AS MOOT**.

### FACTUAL BACKGROUND

Daniels brings this lawsuit against the State of Texas only. (*See* Dkt. 1; Dkt. 30 at 2 ("The State of Texas is the true defendant.")). For purposes of the Court's consideration, the following facts alleged by Daniels are taken as true.[1]

---

[1] The Court considered not only the complaint (Dkt. 1) but also Daniels's supplemental pleadings and her filings in relation to the State of Texas's motion to dismiss, including what Daniels filed at the following docket numbers: 20, 21, 24, 27, 28, 30, 31, and 33.

Daniels alleges that her child, D.D., is in "temporary conservatorship of the DFPS of Texas [Texas Department of Family and Protective Services]." (Dkt. 1 at 1). The bulk of her allegations relate to D.D.'s care and Daniels's interactions with various individuals—whose affiliations are not always provided—regarding D.D. (*See, e.g.*, Dkts. 1, 20, 27).

She appears to allege that D.D. was "removed Oct 4th 2022 and sent to CWOP [children without placement]" and that "CPS [Child Protective Services] falsified [an] affidavit to remove [D.D.] from home." (Dkt. 1 at 1; Dkt. 27 at 2).

She alleges in her complaint, *inter alia*, that D.D. "ran[]away multiple times" from CWOP, "grown men were allowed to pick up [D.D.] from the home with no police enforcement being called," D.D. "and her peers were up talking to some construction workers," the "cameras don[']t work in that home only window sensors," D.D. "called and said there was no food [and] the kids had to fry tortilla shells for chips," "log ins were falsified saying the girls left unauthorized after staff giving them permission," and D.D. was given a phone and "was able to communicate online to grown men to come pick her up." (Dkt. 1 at 1–3; *see* Dkt. 27 at 2–5, 7). She also appears to allege that the "staff" "didn't follow the runaway protocol the first 2/3 times [D.D.] ran[]away," D.D.'s "CPS caseworker Amy Montes and or CWOP staff didn't alert [Daniels] upon [D.D.] sneaking out and running away," and that after D.D. "returned to CWOP," she was "authorize[d] to take a walk w[ith] a peer not even a[n] hour later." (Dkt. 1 at 2–3; *see* Dkt. 27 at 2–5, 7).

She also alleges that D.D. "had STD's that were left untreated for over 30 days due to CPS saying results hadn't come back on Dec 6th 2022," but "that was false." (Dkt. 1 at 3–4). She further alleges various actions by the CPS caseworker, including that the case worker "did a[n] interview" at Daniels' home and stated that notes said Daniels "didn't want anything to do with [Daniels's] child, which was another lie" and that the caseworker has only visited D.D. "once since [her] placement in Brenham Tx at Bluebonnet Haven." (Dkt. 1 at 3.)

She makes various allegations about other individuals as well. For example, she says "caseworker Vicki Israel," who preceded Amy Montes, and her supervisor could not correct an affidavit that was "falsified" and that Israel lied about a referral to a Houston program called Arrow. (Dkt. 1 at 1; *see* Dkt. 27 at 2). She also alleges that Judge Cheryll Mabray "verbally assault[ed]" Daniels during a permanency hearing. (Dkt. 20 at 1–2).

Daniels makes few allegations that are specifically about the State of Texas in her complaint. Those allegations are that she "trusted the State of Texas to assist [her] and her family to get the help [D.D.] and [Daniels] needed so badly only to get dragged and for us to suffer more anguish, distress[,] and sadness" and that the "State of Texas failed [her] child and family." (Dkt. 1 at 3–4). In later filings, she appears to attribute many of the allegations in her complaint to the State of Texas. For example, she states that the "State of Texas failed to follow runaway protocol pertaining to child D.D. while in care, no food, child D.D. did drugs, drunk alcohol, ran[]away multiple times[, and] continued to be sex trafficked while in care of the State of Texas" and states that "[t]his claim was brought

about State of Texas due to falsifying affidavit of removal." (Dkt. 33 at 2; Dkt. 30 at 2). She also appears to allege in later filings that her family "suffered mentally, physically and financially from October 4 2022, [to the] present and in the future because of the actions the State of Texas should be held accountable for" and references the "neglectful actions of the State of Texas pertaining to child D.D." (Dkt. 33 at 1; Dkt. 31 at 1; *see* Dkt. 31 at 2 (alleging State of Texas caused "trauma" and "undue harm to families" and "adverse effects" on D.D.'s mental and emotional stability)).

Though Daniels did not allege any specific causes of action in her complaint, she appears to name or reference federal and state-law causes of action in later filings. For example, the filings include the following phrases: "negligence of child D.D. while in care of the State of Texas from Oct 3-2022 – present;" "exploitation of child D.D.;" "emotional distress" of D.D. and her parents, Daniels and Derrick Gamble; "protection of due process" of the parents; "gross negligence that the State of Texas caused to the family under Sec 41.001[,] Sec 41.002[,] and Sec 41.003;" and "the parent-child relationship wasn't protected from unne[ce]ssary and unconstitutional interference." (Dkt. 28 at 1; Dkt. 33 at 1). She also states that her claims are, *inter alia*, "violation of [her] parental rights, the right to be free from discrim[i]nation, the protections of due process[,] verbal and or written threats to terminate my parental relationship," and "negligence." (Dkt. 30 at 2–4).

In her complaint, Daniel seeks to have the State of Texas "acknowledge their flaws, faults, and negligible [sic] actions." (Dkt. 1 at 4). In her response, she also appears to seek "145,000 from the State of Texas." (Dkt. 28 at 1).

In the pending motion, the State of Texas argues that Daniels's claims must be dismissed under 28 U.S.C. § 1915 and because Daniels "lacks Standing to bring claims against the State of Texas," the "State of Texas has Eleventh Amendment Immunity from Suit," and Daniels "fails to state a claim upon which relief may be granted." (Dkt. 22 at 2).

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(1)

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Id*. The party asserting that federal subject matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Under Rule 12(b)(1), the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289, 293 (5th Cir. 2008).

## ANALYSIS

Construing Daniels's allegations liberally, Daniels asserts against the State of Texas state-law causes of action as well as a cause of action for the deprivation of constitutional rights under color of state law pursuant to 42 U.S.C. § 1983. However, the Eleventh

Amendment's grant of sovereign immunity bars Daniels from asserting her § 1983 claims against the State of Texas. Obligated to dismiss Daniels' only federal claim, the Court declines to exercise supplemental jurisdiction over Daniels's remaining state-law claims.

### I.        Sovereign Immunity

The Supreme Court has held the Eleventh Amendment provides "an unconsenting State [with immunity] from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see* U.S. Const. amend. XI. "There are only two exceptions to this long-standing rule." *Pace v. Bogalusa City Sch. Bd.*, 325 F.3d 609, 613 (5th Cir. 2003), *aff'd*, 403 F.3d 272 (5th Cir. 2005). The first, is if Congress abrogates a state's sovereign immunity to suit pursuant to its "power [under § 5] of the Fourteenth Amendment." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). And the second, is if a state decides to "waive its sovereign immunity by consenting to suit." *Id.* Absent the presence of either of these two circumstances, a plaintiff cannot sue a state—or any of its agencies—in federal court. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 100 ("[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Eleventh Amendment immunity is a "jurisdictional bar [that] applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp.*, 465 U.S. at 100–01.

Daniels has sued the State of Texas under Section 1983. Section 1983 does not abrogate the states' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345

(1979); *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) ("The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983."); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Moreover, there is no indication that the State of Texas consented to be sued by Daniels. (*See* Reply Br., Dkt. 29 at 1 (arguing that "Plaintiff's entire lawsuit is barred by sovereign immunity")).

Daniels's federal claims against the State of Texas are thus **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(1) as barred by sovereign immunity. *See United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 666 (5th Cir. 2019) ("Claims barred by sovereign immunity are dismissed without prejudice."); *Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996) ("[C]laims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

## II. Supplemental Jurisdiction

Federal district courts generally have supplemental jurisdiction over state-law claims via the supplemental jurisdiction statute, 28 U.S.C. § 1367. However, "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." *Hernandez v. Texas Dep't of Hum. Servs.*, 91 F. App'x 934, 935 (5th Cir. 2004) (citing *Pennhurst State School & Hosp.*, 465 U.S. at 120); *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 542 (2002) ("[W]e hold that § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants."); *see also Cox v. Texas*, 354 F. App'x 901, 902–03 (5th Cir. 2009); *see, e.g., Wharton v.*

*Metro. Transit Auth. of Harris Cnty. ("Metro")*, No. CIV.A. H-05-0413, 2005 WL 1653075, at *3 (S.D. Tex. July 8, 2005) ("Since plaintiff fails to make any showing that the state of Texas has either waived sovereign immunity with respect to her state tort claims or consented to suits on them brought in federal court, the court concludes that the Supreme Court's decision in *Raygor* precludes it from asserting supplemental jurisdiction over these claims alleged against Metro."). The supplemental jurisdiction statute "does not abrogate Eleventh Amendment immunity." *Hernandez*, 91 F. App'x at 935 (citing *Raygor*, 534 U.S. at 541–42).

There is no indication that the State of Texas consented to be sued by Daniels or that it has waived sovereign immunity with respect to any of the state-law causes of action that Daniels arguably asserts. Thus, Daniels's state-law claims against the State of Texas are dismissed without prejudice.

Even if the Eleventh Amendment did not bar adjudication of the pendent state-law claims against the State of Texas, the Court would still decline to exercise supplemental jurisdiction over Daniels's state-law claims. Federal district courts have the discretion to decline to exercise supplemental jurisdiction over state-law claims; that discretion is guided by the statutory factors set forth in 28 U.S.C. § 1367(c) and the common-law factors of judicial economy, convenience, fairness, and comity. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

The factors listed in 28 U.S.C. § 1367(c) are:

> (1) the claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Mendoza*, 532 F.3d at 346. The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

Having considered the statutory and common-law factors, the Court would follow the general rule and decline to exercise supplemental jurisdiction over Daniels's state-law claims.

Accordingly, it is **ORDERED** that Daniels's claims are **DISMISSED WITHOUT PREJUDICE**. All other pending motions are **DENIED AS MOOT**.

SIGNED at Houston, Texas on February 12, 2024.

                                                  GEORGE C. HANKS, JR.
                                                  UNITED STATES DISTRICT JUDGE